UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CR-10-mj-94-MJK |
| | ) | |
| PATRICIA EVE STRONG | ) | |

**ORDER ON APPEAL**

Concluding that there is sufficient evidence to support a finding beyond a reasonable doubt of the identity of the Defendant, the Court affirms the conviction of Patricia Strong for interfering with federal officers.

I.   **STATEMENT OF FACTS**

   A.   **Procedural History**

On June 11, 2010, the United States filed a criminal complaint against Patricia Eve Strong, alleging that on June 10, 2010, she had forcibly resisted Border and Customs Protection Officers while they were engaged in the performance of their professional duties, a violation of 18 U.S.C. § 111(a). *Compl.* (Docket # 1). On June 11, 2010, the Magistrate Judge ordered Ms. Strong temporarily detained. On June 15, 2010, the Magistrate Judge held a preliminary hearing and detention hearing, after which she found probable cause to believe that the Defendant committed the offense charged and that because Ms. Strong represented "a clear risk of flight," the Magistrate Judge ordered her detained pending trial. *Order on Prelim. Examination and Detention* at 1 (Docket # 13). On June 15, 2010, Ms. Strong waived the right to thirty days preparation time before trial. *Waiver of a*

*Right to Have 30 Days to Prepare for Trial* (Docket # 16). On June 21, 2010, the Defendant consented to trial before the United States Magistrate Judge and both the United States and the Defendant waived the right to jury trial. *Consent to Proceed Before a Magistrate Judge in a Misdemeanor Case* (Docket # 22); *Waiver of a Right to Trial by Jury* (Docket # 22).

The trial before Magistrate Judge Kravchuk was held on June 28, 2010. At the close of evidence, the Magistrate Judge found Ms. Strong guilty as charged and later that day, sentenced her to a time served sentence of eighteen days incarceration.[1] *J.* (Docket # 31). On June 29, 2010, Ms. Strong filed a notice of appeal to this Court. *Def.'s Notice of Appeal* (Docket # 33). After the trial transcript was filed, Ms. Strong filed her brief on August 13, 2010, *Def.'s Appeal Brief* (Docket # 40), and the Government responded on August 30, 2010, *Resp. of the United States to Def.'s Appeal Brief* (Docket # 41).

### B. An Incident at the Border

On June 10, 2010, at about 3:30 p.m., a woman named Patricia Strong appeared from Canada as a bus passenger at the International Port of Entry in Calais, Maine, seeking admission into the United States. *Bench Trial and Sentencing Proceedings* 12:6-12 (Docket # 36) (*Tr.*). Ashley Guy, a United States Border Patrol Officer, approached Ms. Strong. *Id.* 8:23-9:7; 12:6-7. Officer Guy asked Ms. Strong for identification and she presented the officer with a passport. *Id.* 36:16. Officer Guy asked Ms. Strong a series of questions, such as her permanent address and the name of her landlord. *Id.* 13:1-8. She gave the address,

---

[1] She also imposed a $25 special assessment. *J.*

2

which conformed to the address on her driver's license, but she did not know the name of her landlord. *Id.* Officer Guy asked her about the names of family, friends, or others who could confirm information about her; she did not give any. *Id.* 13:9-15.

When asked about criminal history, Ms. Strong denied she had ever been to court. *Id.* 13:25-14:5. However, when Officer Guy ran a check on the Canadian criminal history database, there was a match. *Id.* 14:10-19. Furthermore, when the officers searched her luggage, they found court papers indicating that there were pending Canadian charges for resisting arrest and theft under $5,000. *Id.* 14:15-19. The court papers revealed that she was supposed to appear in court in Canada on June 16, 2010, on one charge and on June 28, 2010, on another. *Id.* 19:7-11. When the officer asked her whether she intended on returning to Canada to face the pending charges, she said she was not sure. *Id.* 19:12-18.

Ms. Strong completed a Form 6059B, a Customs Declaration form. *Id.* 15:11-15; Gov't Ex. 1. However, she failed to list an address where she was going to stay in the United States and she asked Officer Guy "to look up an address on the computer to find a campsite for her to go to." *Id.* 16:14-25. Although she had a sleeping bag, she had virtually no other camping equipment. *Id.* 17:10-18:5, 39:19-21.

Officer Guy concluded that she was not a suitable candidate for admission into the United States. Officer Guy explained that Ms. Strong had only a couple of dollars with her, had no known place to stay in the United States, had no itinerary

upon admission, had no confirmable address in Canada, and had criminal charges pending in Canada. *Id.* 19:19-20:4.

Once Officer Guy determined that Ms. Strong was not a suitable person for admission, she was required to process her. *Id.* 20:5-7. Ms. Strong became "very resistive and argumentative about the whole process." *Id.* 20:8-11. After receiving permission from her supervisor to deny admission, Officer Guy told Ms. Strong that she could withdraw her application for admission—an option that would have immediately allowed Ms. Strong to "turn around and head back" to Canada—but Ms. Strong refused to do so. *Id.* 20:23-21:5, 43:15-19.

The decision was therefore made to proceed with an expedited removal. *Id.* 21:5-6. To complete this process, fingerprints are required, and Officer Guy attempted to fingerprint Ms. Strong. *Id.* 22:3; 45:25-46:1. However, Ms. Strong refused to cooperate with the process, and informed Officer Guy, "No, you are not having my fingerprints." *Id.* 22:18-23:1. When Officer Jonathan Voisine and Assistant Port Director Hodson attempted to place her in a holding cell, she became "dead weight" and "buckled and resisted" the officers the whole time. *Id.* 23:13-18, 120:2-12. While she was in the holding cell, Officer Guy went every fifteen minutes and asked her whether she was ready to give her fingerprints. *Id.* 24:1-5. She continued to refuse, *id.*, and she insisted on seeing a lawyer. *Id.* 72:17-22, 111:13-19.

After about four hours, it was resolved to obtain Ms. Strong's fingerprints. *Id.* 25:12-23. When Officer Guy went into the cell to remove Ms. Strong for

4

fingerprinting, Ms. Strong's right hand was handcuffed to the bench. *Id.* 26:16-25. When Officer Guy attempted to unlock the handcuff, Ms. Strong held her other hand over the keyhole of the handcuff lock preventing Officer Guy from unlocking the handcuff. *Id.* 26:16-27-7. Officer Guy described Ms. Strong as being 2-3 inches taller and one hundred pounds heavier than her. *Id.* 28:14-17. Finally, with the assistance of Officer Anne Nixon and Paul Thompson each holding one arm, Officer Guy was able to unlock the handcuff. *Id.* 27:7-13.

The officers then attempted to lead Ms. Strong to the IAFF Station, where the fingerprinting was to be performed—a distance of about six feet from the holding cell. *Id.* 27:25-28:6, 28:17-23. Ms. Strong swore at the officers, pushed, flailed, and buckled her knees as they tried to move her to the fingerprinting station. *Id.* 28:1-6, 121:23-122:1. When the Officers attempted to fingerprint Ms. Strong, she held her fists in such a way as to make fingerprinting difficult, and the Officers were able to get unacceptable, partial prints only. *Id.* 31:10-25, 74:19-75:22, 107:17-109:25, Ex. 4. Finally, Officer Guy attempted to obtain a sworn statement from Ms. Strong but she refused to answer any questions. *Tr.* 34:1-5.

After the Government rested, Ms. Strong did not testify or offer any other evidence. *Id.* 132:6-25.

### C. A Question of Identity

During closing argument, defense counsel pointed out that during trial the Government had never made an in-court identification of the Defendant as being Patricia Strong. *Id.* 143:3-14. The Government responded that the identity of the

5

Defendant had not been raised as a defense, that Ms. Strong had been identified in other proceedings, and that the evidence established that the Defendant in the courtroom was Ms. Strong. *Id.* 146:13-21. The defense responded that other in-court identifications could not be used to sustain the Government's burden to prove every element at trial, including that the person in the courtroom charged with the crime was in fact Patricia Strong. *Id.* 147:20-148:8. Addressing the issue of identity,[2] the Magistrate Judge remarked:

> That leaves the hole you describe in the government's case to be that they have failed to prove identity beyond a reasonable doubt. That's interesting. It's prosecution 101 that one identifies the defendant. I think, though, based on the testimony that was presented here, a fair inference could be drawn that the person at the border about whom these officers were testifying was Ms. Strong.
>
> So I am going to find that this offense was committed by this defendant and I am going to find her guilty.

*Id.* 149:18-25, 150:1.

The Defendant has appealed her conviction on the single issue of whether the Government sustained its burden to prove the identity of the Defendant beyond a reasonable doubt. *Def.'s Br.* at 3 (stating that the defendant "makes a sufficiency of the evidence challenge to the identity evidence underlying her conviction").

## II. DISCUSSION

### A. Standard of Review

This case is before the Court on appeal from a decision by the United States Magistrate Judge. 18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2); *United States v.*

---

[2] The Magistrate Judge found that that the Government had met its burden to prove each of the three elements of the crime of interfering with federal law enforcement officers, a violation of 18 U.S.C. § 111(a). *Tr.* 148:10-149:17.

*Manning-Ross*, 362 F.3d 874, 875 (1st Cir. 2004) (stating that "[a] defendant challenging a conviction or a sentence rendered by a Magistrate Judge must do so in the first instance in the district court"). In reviewing the Magistrate Judge's conviction, the scope of the appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D); *United States v. McFarland*, 445 F.3d 29, 31 (1st Cir. 2006). The standard of review from a conviction entered by a Magistrate Judge is well-settled: conclusions of law are subject to de novo review, while findings of fact are reviewed only for clear error, "just as would be the case were the matter on appeal from a District Court bench trial to a Court of Appeals." *United States v. McFarland*, 369 F. Supp. 2d 54, 57 (D. Me. 2005) (quoting *United States v. Orme*, 851 F. Supp. 708, 709 (D. Md. 1994), *aff'd*, 51 F.3d 269 (4th Cir. 1995)). Consistent with First Circuit authority, this Court reviews the guilty verdict to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." *United States v. Salimonu*, 182 F.3d 63, 74 (1st Cir. 1999) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), *reh'g denied*, 444 U.S. 890 (1979)).

**B. Identity as an Element of a Crime**

"Identification of the defendant as the person who committed the charged crime is always an essential element which the government must establish beyond a reasonable doubt. However, in-court identification by a witness is not necessarily required. Identification can be inferred from all the facts and circumstances that

7

are in evidence." *United States v. Ayala*, 289 F.3d 16, 25 (1st Cir. 2002) (internal quotation marks omitted). Furthermore, "in-court identification is not necessary when the defendant's attorney himself identifies his client at trial." *Id.* (quoting *United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995)). Under these standards, it is "rare for a sufficiency challenge to succeed." *United States v. Miller*, No. 08-1260, 2009 U.S. App. LEXIS 627 *3 (1st Cir. Jan. 12. 2009) (citing *United States v. Ortiz*, 447 F.3d 28, 32 (1st Cir. 2006)). The question here is whether "a rational [factfinder] could have found the evidence adequate to conclude beyond a reasonable doubt that the defendant was the one who [interfered with federal officers]." *Id.* at *6.

Having carefully reviewed the record, the Court concludes that the evidence as to the Defendant's identity is sufficient to allow the fact finder to draw the conclusion beyond a reasonable doubt that the individual sitting in the courtroom was Patricia Strong. Officer Guy testified that the Defendant produced a passport, which identified her, and subsequently a driver's license was found in her belongings. *Tr.* 36:12-16. The Officers ran a criminal check on Ms. Strong and discovered that there were criminal charges pending in Canada. *Id.* 14:9-19. They then found court papers in her possession consistent with these pending charges. *Id.* Officer Guy gave a general physical description of the Defendant, saying that she was 2-3 inches taller and one hundred pounds heavier than Officer Guy herself. *Id.* 28:14-17.

Significantly, each of the four witnesses—Ashely Guy, Anne Nixon, Paul Thompson and Jonathan Voisine—identified "the Defendant" as "Patricia Strong," and otherwise used the two names interchangeably. *See, e.g. id.* 12:6-9 (direct examination of Ashley Guy: "And directing your attention to June 10th of this year, did you have occasion to encounter the defendant, Patricia Strong, as a bus passenger on Acadia (sic) bus line? Yes, I did."), 69:16-19 (direct examination of Anne Nixon: "Directing your attention to June 10th of this year, did you have occasion to enter . . . the short-term detention cell and talk to the defendant, Patricia Strong? Yes, I did."), 100:4-8 (direct examination of Paul Thompson: "And did there come a second time where you attempted to persuade the defendant, Patricia Strong, to cooperate with the processing requirements, including fingerprinting? Yes, ah, I believe it was about an hour, maybe two hours . . . ."), 120:16-19 (direct examination of Jonathan Voisine: "And does that video recording of Defendant Strong going into the cell accurately depict her going in and the pushing back? Yes.").

Furthermore, at no point was there any hint that the identity of the defendant was a contested issue. The Magistrate Judge had had prior contact with the Defendant at the detention hearing and preliminary examination, and when she introduced the case, the Magistrate Judge recognized and introduced the Defendant as being present with her counsel. *Id.* 4:5 (stating that "[t]he defendant appears with Mr. Jeffrey Silverstein"). The Defendant raised no objection to the trial judge's early identification of the Defendant as Patricia Strong. Following the Court's

9

introduction, defense counsel in his Opening Statement tacitly identified the Defendant as Patricia Strong. *Id.* 7:12-15 (stating that "[The Border Protection Officers] made a determination that Ms. Strong was ineligible after seeing not only her identification paperwork, but also questioning her and searching her contents"). *Alaya*, 298 F.3d at 25 (discussing counsel's identification of his client as evidence of identity). There was no suggestion during the remainder of the trial, including during the defense's extensive cross-examination of the Government witnesses, that Ms. Strong was anyone other than the person the Judge and Ms. Strong's own counsel had identified at the outset.

This is not a case where witnesses had limited exposure to the defendant or were otherwise uncertain that the defendant was the person they had arrested on June 10, 2010. *Cf. Miller*, 2009 U.S. App. LEXIS 627, at *3 (bank robber wearing a disguise). Nor would there reasonably have been such a dispute; four United States Customs and Border Protection Agents testified that on June 10, 2010, they had extensive contact with a person identified as Ms. Strong. They observed her for about four hours, had intimate physical contact with her, and repeatedly talked to her. They had means of identification, including her passport, driver's license, and court documents, to confirm that the woman was Patricia Strong. In short, there was every indication that the defendant in the Bangor courtroom on June 28, 2010 was Patricia Strong, the same Patricia Strong the Agents encountered at the Calais Port of Entry on June 10, 2010. In proving its case, the Government need not

"disprove every hypothesis consistent with the defendant's innocence." *United States v. Santana*, 175 F.3d 57, 62 (1st Cir. 1999).

Although all things may be possible, the testimony of four Officers—each stating that the Defendant was Patricia Strong—is sufficient, when viewed in the light most favorable to the Government, to sustain its burden of proof as to her identity.[3]

## III. CONCLUSION

The Court affirms the conviction of the Defendant.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2010

---

[3] This is not to encourage prosecutors to fail to make an in-court identification of the Defendant. As the Magistrate Judge put it, an in-court identification is "Prosecution 101." If the prosecutor had simply taken a few seconds and asked the Government witnesses to make a positive in-court identification of Patricia Strong, it would not have been necessary to pore over the record and expend the resources of the Government, defense,, and the Court on this appeal.

11